IN RE APPROPRIATION FOR HWY. PURPOSES OF LAND OF SEAS ET AL.

(No. 1220—Decided July 3, 1968.)

*Mr. William B. Saxbe*, attorney general, and *Mr. Don A. Little*, for appellant, Director of Highways.
*Messrs. Moore, Myers, Parsell & Firstenberger*, for appellees, property owners.

BROWN, J.  This is an appeal in a highway appropriation case by the Director of Highways from a final judgment entered on a jury verdict for the property owners, L. Ray Seas and Hazel Seas, representing an award for approximately one-tenth of an acre of land taken and for damages to the residue of the Seas realty in connection with the widening of U. S. Route 30 South, which ran in an east and west direction, and making it a limited access highway where the Seas realty fronted on the south side of U. S. Route 30 South.  This was approximately one-half mile east of the city limits of Marion, Ohio, and located in Marion Township, Marion County, Ohio.

The Seas parcel of realty affected by this condemnation proceeding had approximately 102 feet of frontage on the south side of U. S. Route 30 and, on its east side, approximately 250 feet of frontage on Wheeler Drive.  The Seas realty was almost rectangular in shape.  Wheeler Drive was less traveled than U. S. Route 30 South, had access to U. S. Route 30 South, and would continue to have

such access after completion of the U. S. Route 30 South highway improvement. However, the highway improvement caused U. S. Route 30 South to become a limited access highway where the Seas realty fronted, but would continue to permit access from the Seas realty on the east side to Wheeler Drive.

The Marion Township zoning regulations placed the Seas realty in the commercial zone as it did for all realty extending 1,000 feet in depth on both the north and south side of U. S. Route 30 South, starting from the easterly corporate limits of the city of Marion and continuing easterly beyond the Seas realty.

The Director of Highways, appellant herein, claims for the first assignment of error that the trial court committed reversible error in permitting expert witnesses for the landowner to testify on direct examination concerning the sale price of comparable real properties over objections timely made by the state.

The author of the text on the topic "Eminent Domain" in 19 Ohio Jurisprudence 2d 584, Section 163, states as a proposition of law prevailing in Ohio that a witness on real estate values, after being qualified as an expert, may state in his direct examination that he is acquainted with the values of real estate in the vicinity of the property in litigation and knows the sale price of specific parcels of similar quality and location, but that evidence of sales prices of such comparable properties is inadmissible on direct examination of one's own real estate expert, although such evidence is permitted on cross-examination. 19 Ohio Jurisprudence 2d 585. However, a careful examination and analysis of the Ohio cases footnoted, and hereinafter discussed, in claimed support of this proposition of law do not sustain the proposition stated in this text.

In *W. M. Southern Realty Co.* v. *Schmidt*, 3 Ohio App. 70, a witness called for plaintiff was asked on cross-examination the sales price of a comparable property. The defendant objected, and the objection was sustained. The Court of Appeals, oblivious that this was an abortive attempt on cross-examination to obtain the sales price of a

comparable property, stated, as obiter dicta, that this was an effort on *direct* examination to prove the selling price of another lot in the neighborhood, and that the weight of authority is against the introduction of such evidence. *W. M. Southern Realty Co.* v. *Schmidt*, 3 Ohio App. 70, at page 75.

In *Muccino* v. *Baltimore & Ohio Rd. Co.*, 33 Ohio App. 102, at pages 104, 107, the trial court's rulings were affirmed in excluding on direct and cross-examination testimony of the sale prices of a claimed comparable sale (the Botzum property) for the reason that the Botzum property was not an actual bona fide sale because the purchaser was not financially responsible, and also because the Botzum property was dissimilar to the property sought to be appropriated. The Court of Appeals, therefore, was expressing obiter dicta when it stated it is better practice to exclude such evidence on direct examination. *Muccino* v. *Baltimore & Ohio Rd. Co.*, 33 Ohio App. 102, at page 105.

In *DeRose* v. *Cleveland*, 14 Ohio Law Abs. 176, paragraph three of the headnotes, and at page 178, the Court of Appeals considered the claimed prejudicial error to plaintiff in excluding evidence of specific sales of similar property in the vicinity of the appropriated property on *cross-examination*. In deciding this question the Court of Appeals held that the testimony of the sale price of such comparable property was admissible on *cross-examination*, but expressed obiter dicta in paragraph two of the headnote that such testimony was inadmissible on direct examination.

In *Morison* v. *Cleveland*, 32 C. D. 215, 17 C. C. (N. S.) 427, the court held that on *cross-examination* a witness, properly qualified, may testify as to sales prices of comparable sales, but it is not permissible to incorporate the sales price of comparable properties in the question propounded to the witness.

*Cleveland Terminal & Valley Ry. Co.* v. *Gorsuch*, 18 C. D. 468, 8 C. C. (N. S.) 297, affirmed 76 Ohio St. 609 (criticized in *Muccino* v. *Baltimore & Ohio Rd. Co.*, 33 Ohio App. 102, at page 107), held that on direct examination from

a witness, properly qualified, could be elicited evidence as to general selling price of lots in the neighborhood within a comparatively short time. *Trustees of Cincinnati Southern Ry. Co.* v. *Garrard,* 7 W. L. B. 272, 8 Dec. Rep. 389, and *Cincinnati* v. *Neff,* 20 W. L. B. 8, 10 Dec. Rep. 292, two Hamilton County Common Pleas Court decisions, involve proper jury instructions in appropriation cases, but do not consider the question of admissibility of evidence on direct examination.

Logic and justice, and the important objective in any judicial forum to obtain a full exploration of the truth, require us to reject any text writer's conclusion and the foregoing expressions of obiter dicta that evidence of sales prices of comparable realty is inadmissible on direct examination of a properly qualified witness.

Instead, we adopt and apply the rule that evidence of sales prices of other comparable real property in the vicinity of the condemned property is admissible on direct examination of one's own real estate expert as substantive proof of the value of the property under condemnation, where the conditions with respect to the other land and to the sale thereof are similar to those involved in the property under condemnation. *Redfield* v. *Iowa State Highway Commission,* 251 Iowa 332, 99 N. W. 2d 413, 85 A. L. R. 2d 96; *Forest Preserve District of Cook County* v. *Lehman Estate, Inc.,* 388 Ill. 416, 58 N. E. 2d 538; *County of Los Angeles* v. *Faus* (Cal. App.), 304 P. 2d 257; (Supreme Court), 48 Cal. 2d 672, 312 P. 2d 680; *Lawrence* v. *Greenwood,* 300 N. Y. 231, 90 N. E. 2d 53; 85 A. L. R. 2d 112; 174 A. L. R. 387; 118 A. L. R. 869; 18 American Jurisprudence 994, Section 351; II Wigmore on Evidence, 3rd Ed., 503 to 507, Section 463; 5 Nichols on Eminent Domain 278.

Support for this rule by the Ohio Supreme Court can be found in *Ohio Turnpike Commission* v. *Ellis,* 164 Ohio St. 377 (appeal dismissed and certiorari denied, 352 U. S. 806), pages 382-384 in the opinion, reversing *Ellis* v. *Ohio Turnpike Commission,* 70 Ohio Law Abs. 417 (see pages 428-431 in Judge Hurd's opinion), where paragraphs four and five of the syllabus (164 Ohio St. 377) hold:

"4. In an appropriation proceeding, the testimony of a qualified witness, who has made a careful examination and investigation as to the value of the land, is not rendered inadmissible because, in reaching his conclusion as to value, he took into account as one factor the amount for which comparable nearby properties were sold, as indicated by the federal revenue stamps attached to the deeds.

"5. In an appropriation proceeding, it is not reversible error to admit in evidence, as bearing on the question of the value of the land, the price at which a Board of County Commissioners, not required to sell, sold comparable nearby land under sealed bids, pursuant to an advertisement as prescribed by law, where the right to reject any and all bids submitted was reserved and where such sale was recently consummated."

In the *Ellis case, supra* (164 Ohio St. 377), at page 382, the landowner challenged the admissibility on direct examination of testimony of the commission's witness concerning the value of comparable properties in the vicinity based on his examination of revenue stamps attached to deeds conveying such comparable properties, and, at page 383, challenged admissibility on direct examination of testimony of the price at which the County Commissioners of Lucas County had sold under sealed bids 8 acres of land comparable to the Ellis land. Such evidence was considered admissible on direct examination by the Ohio Supreme Court. In view of this factual background the Ohio Supreme Court, in paragraphs four and five of its syllabus in *Ellis, supra,* was, in effect, holding that evidence of sales prices of comparable properties in the vicinity of the appropriated property is admissible on direct examination from a witness properly qualified.

Construing or extending the decision of the Ohio Supreme Court in *Ellis* v. *Ohio Turnpike Commission,* 164 Ohio St. 377, so that it sustains the rule that evidence of sales prices of comparable properties is admissible on direct examination is in harmony with the majority or Massachusetts rule and rejects the minority (Pennsylvania) rule.

The minority Pennsylvania rule which excludes evidence of sales prices of comparable properties on direct examination as independent proof of the value of the land involved, but permits introduction of such evidence on cross-examination to test the knowledge of a given witness as to value, is predicated upon the questionable reasoning and argument that in the eliciting of the opinion of value for the condemned property from the witness on direct examination the jury should not be confused and misled by the injection of collateral matters concerning comparable sales, all of which would make the judicial proceedings interminable. Such reasoning is pure myth and fiction, and, moreover, if there is truth in the proposition that evidence of comparable sales and sale prices elicited on direct examination is misleading to the jury, then it logically follows, as night follows day, that such evidence is equally misleading when elicited on *cross-examination*. *Ipso facto*, its admissibility on cross-examination is cogent, forceful argument and reason for its admissibility on direct examination. The reason for the rule for exclusion of such testimony on direct examination fails, and, therefore, the rule of exclusion should likewise fail. Consequently it should be abolished as an ancient and outworn anachronism. It fetters and curtails the objective of full disclosure of all relevant facts so necessary for a complete judicial inquiry and reaching a just result.

This is best explained in a discussion of the Pennsylvania minority rule, and its rejection, by a California court in the case of *County of Los Angeles* v. *Faus* (Cal. App.), 304 P. 257,[1] at page 270:

[1]304 P. 2d 257 was reversed by the California Supreme Court in the *County of Los Angeles* v. *Faus*, 312 P. 2d 680, but the above excerpted reasoning from 304 P. 2d 257 at page 270 was followed by the California Supreme Court in holding that sales prices of comparable properties was admissible on direct examination, supporting this holding with forceful logic. The California Court of Appeals in *Faus* had reluctantly excluded prices of comparable sales on direct examination because of the rule of *stare decisis*, but by reason of its criticism of the rule of exclusion of sales prices of comparable sales on direct examination encouraged the California Supreme Court to order reversal.

"The jury, having the case submitted to it upon the least enlightening evidence, is in for a real surprise when the instructions are given. Ever since adoption of the rule excluding other sales on direct it has been stated repeatedly that such sales, though the prices are given on cross-examination, are not evidence of value, are to be considered only upon the imputation of lack of information or trustworthiness of the witness. The jurors are so instructed. They know that sales are the basis on which mankind universally values properties; they have many of the pertinent sales before them; when they hear the judge instruct that those sales are not any evidence of value the jurors who are still listening begin to wonder what is the matter with the judge; but those who are listening, as well as those who are not, pay no attention to that instruction and proceed to do the job the best way they can despite the barriers placed in their path by the court. This whole picture is unrealistic."

The first assignment of error is, therefore, overruled.

The second assignment of error claims prejudicial error of the trial court in giving special instructions two, three and four to the jury before argument. These special instructions were as follows:

"Special Instruction No. 2: I charge you that after the project and as a result of it the property of Mr. and Mrs. Seas will have lost its commercial status under the Marion Township zoning regulations the property may not be thereafter used for commercial purposes.

"Special Instruction No. 3: You are instructed as a matter of law that after the project the lot of Mr. and Mrs. Seas will not any longer abut on or have a front lot line on United States Route 30 South. After the project the Seas property line along Route 30 South will no longer be the line from which any required setback is to be measured.

"Special Instruction No. 4: The Marion Township zoning regulations provide among other things that the front lot line on a corner lot is the shortest lot line which abuts a street. You are instructed that after this project

there will be but one lot line of this lot abutting on a street. Such lot line will be the one on Wheeler Drive."

The foregoing special instructions were an attempt by the trial judge to apply the Marion Township zoning regulations to the Seas real estate as affected by the appropriation of part of the Seas realty by the state of Ohio for highway purposes. In essence the three instructions concluded as a matter of law that the Seas property, by reason of appropriation of part of the Seas realty, caused the entire Seas property on U. S. Route 30 South to lose its commercial status under the zoning regulations, and that after the appropriation proceedings were completed the Seas property would no longer abut on or have a front lot line on U. S. Route 30 South, and that as a consequence it would have only one front lot line on the east side thereof and this would be abutting on Wheeler Drive.

In determining whether the trial judge was correct in giving these special instructions the following pertinent provisions of the Marion Township zoning regulations must be considered.

"Section II

"There are hereby created 'COMMERCIAL ZONES' for Marion Township, Marion County, Ohio, which said Commercial Zones shall be limited to certain highway frontage areas and shall be of two types designated as follows:

"A. *General Commercial Districts*

"*General Commercial Districts* shall comprise the highway frontage on these public highways and roads now designated as: State Routes No. 30, South; 23; 739 and 4 and County Road No. 175 within Marion Township, Marion County, Ohio. In said General Commercial Districts businesses of a general retail, wholesale trade and commercial recreation shall be permitted."

We now quote from Section III:

"Section III. The Commercial Zone shall hereinafter be defined as being the real estate fronting on public highways and roads now designated as: State Route No. 30 South; No. 23; No. 739; No. 4; No. 95; and, County Road No. 175 within Marion Township, Marion County, Ohio.

The depth of said Commercial Zone shall commence on the property fronting on the above described highways and public roads from the 'Front Lot Line' as defined in Section XIII, Sub-Section K, Paragraph 4 of the existing Zoning Resolution of Marion Township, Marion County, Ohio, a distance of one thousand (1000) feet.'' (Amendment effective March 25, 1963.)

Section III, 3., B:

''1. Front yards—There shall be a set-back of not less than (75) feet in depth from the highway or street line unless shown otherwise on the zone map; front yards may be used for parking to within (20) feet of property line.''

Section VIII—Changes and Amendments:

''Amendments or supplements to the Zoning Resolution may be made as provided by Sections 519.02 to 519.11, inclusive, of the Revised Code of Ohio, except * * *.''

Section XIII, Sub-Section K, Paragraph 1:

''1. Zoning lot—A single tract of land abutting a dedicated street, road, or public way, occupied or intended to be occupied by a use, building or group of buildings and their accessory uses and buildings as a unit, together with such open spaces as are required by this resolution * * *.''

Paragraph 3:

''3. Interior lot—A lot other than a corner lot, or through lot.''

Paragraph 4:

''4. Front lot line—The lot line separating an interior lot from the street upon which it abuts: or the shortest lot line of a corner plot, which abuts a street. * * *.''

The zoning regulations in its preamble refers to a map marked ''Official Map of Marion Township Zoning Regulations'' which is incorporated by reference in the zoning resolution and made a part thereof. This zoning map shows the area abutting U. S. Route 30 South indicating 1,000 feet on the south side thereof east of Marion, Ohio, and including the entire Seas property, as located in the commercial zone. At the time the appropriation proceedings were instituted by the Director of Highways the Seas property was commercial and by reason of the definition

of front lot line the Seas property was fronting and abutting on U. S. Route 30 South. There is nothing in the zoning regulations which would cause the Seas property to lose its status as real estate in the commercial zone or to change the fact that it was abutting and fronting on U. S. Route 30 South because of the condemnation proceedings and the taking of part of the Seas property for highway purposes by the state of Ohio.

The only authorization under the laws of Ohio for a change of a township-use classification from a commercial zone status to any other status is as outlined in Sections 519.02 to 519.11, inclusive, Revised Code, and this would not authorize any change of the commercial zone status by some other method such as by any action of a condemning authority taking private property for a public purpose. These ten sections of Chapter 519, Township Zoning, are referred to in Section VIII of the Marion Township Zoning Regulations. In that connection the pertinent part of Section 519.12, Revised Code, "Amendments or Supplements to Zoning Resolution; Procedure; Referendum," should be considered, which provides:

"Amendments or supplements to the zoning resolution may be initiated by motion of the township rural zoning commission, by the passage of a resolution therefore by the board of township trustees or by the filing of an application therefor by one or more of the owners or lessees of property within the area proposed to be changed or affected by the proposed amendment or supplement with the township zoning commission. The board of township trustees shall upon the passage of such resolution certify it to the township zoning commission." (Effective June 18, 1959, 128 Ohio Laws 128, 130.)

No such change or amendment according to statutory authority, Sections 519.02 to 519.11, inclusive, Revised Code, was made concerning the commercial zone status of the Seas realty.

After the appropriation proceedings were commenced, as well as before any condemning authority's activities, the Seas property abutted and fronted on U. S. Route 30 South.

"Abut" is defined as touching (as of contiguous estates) along a border or with a projecting part (as land abuts on the road); terminating at a point of contact; bordering on. "Fronting" means something that faces forward, to face or front in a specified direction, to face or look toward, or relating to the front or forward part. Webster's Third New International Dictionary.

The three challenged special instructions violated the zoning change amendment procedure prescribed by Section VIII of the Zoning Regulations and the statutory procedure for zoning changes provided by Sections 519.02 to 519.11, inclusive, Revised Code.

The fact that the condemnation proceedings of the state resulted or will result in creating a limited access highway on the north side of the Seas property, where a small strip of land has been appropriated, and where a chain-link fence will be erected to prevent access from the Seas property to U. S. Route 30 South, does not change its commercial zone status under the zoning regulations and does not in any way change the fact that the Seas lot fronts and abuts on U. S. Route 30 South.

Accordingly, the second assignment of error is well taken because the three special instructions given by the trial judge numbered two, three and four, were erroneous and prejudicial, requiring reversal of the judgment in this case and a remand to the Common Pleas Court for a new trial.

*Judgment reversed.*

GUERNSEY, P. J., and COLE, J., concur.

BROWN, J., of the Sixth Appellate District, sitting by designation in the Third Appellate District.