IN RE APPROPRIATION FOR HWY. PURPOSES OF LAND OF SEAS ET AL.

(No. 68-556—Decided June 18, 1969.)

---

*This decision was made after the death of JUSTICE ZIMMERMAN and before the appointment of a successor.

*Messrs. Moore, Myers & Parsell* and *Mr. Walter D. Moore,* for appellants, L. Ray Seas and Hazel C. Seas.

*Mr. Paul W. Brown,* attorney general, and *Mr. I. Charles Rhoads,* for appellee, Director of Highways.

MATTHIAS, Acting C. J. Special instructions Nos. 2, 3 and 4, given by the trial court to the jury, read as follows:

Special Instruction No. 2. "I charge you that after the project and as a result of it the property of Mr. and Mrs.

Seas will have lost its commercial status under the Marion Township zoning regulations the property may not be thereafter used for commercial purposes."

Special Instruction No. 3. "You are instructed as a matter of law that after the project the lot of Mr. and Mrs. Seas will not any longer abut on or have the front lot line on United States Route 30-S. After the project the Seas property line along route 30-S will no longer be the line from which any required setback is to be measured."

Special Instruction No. 4. "The Marion Township zoning regulations provide among other things that the front lot line on a corner lot is the shortest lot line which abuts a street. You are instructed that after this project there will be but one lot line of this lot abutting on a street. Such lot line will be the one on Wheeler Drive."

It is clear that by the giving of those special instructions the trial court necessarily determined *as a matter of law* that the remainder of the subject property in the instant case no longer retained the commercial status that it had enjoyed prior to the appropriation made by appellee. If the trial court was correct in making that determination from its interpretation of the applicable Marion Township Zoning Resolution and Regulations, the special instructions as given did not prejudice the appellee; otherwise, they did.[1]

The Marion Township Zoning Resolution, as amended March 25, 1963, provides in part:

Section III. "The Commercial Zone shall hereinafter be defined as being the real estate fronting on public highways and roads now designated as: State Route No. 30 South * * * within Marion Township, Marion County, Ohio. The depth of said Commercial Zone shall commence on the

---

[1]The original jury verdict awarded $1,000 as "compensation for land taken" and $10,000 for "damages to the residue."

This court presumes that some portion of the $10,000 for "damages to the residue" was intended by the jury as compensation for loss of commercial status, but it is impossible to know with certainty. It is this aspect which makes the instruction necessarily prejudicial, if erroneous.

property fronting on the above described highways and public roads from the 'front lot line' as defined in Section XIII, subsection K, paragraph 4 of the existing Zoning Resolution of Marion Township, Marion County, Ohio, a distance of one thousand (1,000) feet.''

The definition of ''front lot line,'' referred to above, is as follows:

''Front lot line—The lot line separating an interior lot from the street upon which it abuts: or the shortest lot line of a corner lot, which abuts a street. In case the corner lot has equal frontage on two (2) or more streets, the lot shall be considered to front on that street on which the greatest number of buildings have been erected on that side of the street within the same block.''

It was stipulated that the subject property was in the commercial zone before the appellee's appropriation. The question that the trial court had before it was whether it remained within the commercial zone after the appropriation.

To answer this question requires an interpretation of the word ''abuts,'' used in the definition of ''front lot line'' as set forth above. If the word ''abuts'' necessarily includes the right of access, the front lot line of the subject property would be on Wheeler Drive, and the property, by operation of law, might lose its commercial status under Section IV of the Marion Township Zoning Resolution,[2] which provides:

''All property located within the boundaries of Marion Township, Marion County, Ohio, and not heretofore

---

[2]Should the word "abuts" be interpreted as necessarily including the right of access, that determination alone would not automatically lead to the conclusion that the commercial status of the subject property would cease by operation of law. This court would have to determine further that the subject property was no longer *"real estate fronting on * * * State Route No. 30 South,"* as those words are used in Section III of the Marion Township Zoning Resolution.

In view of our conclusion, *infra,* that the term "abuts" does not necessarily include the right of access it is not necessary to construe the applicable language of Section III of the Marion Township Zoning Resolution.

or herein defined as being in the Industrial Zone or Commercial Zone shall be Residential Zone."

If the word "abuts" does not include the right of access, the front lot line of the subject property remains on U. S. Route 30 South, and the property retains its commercial status.

Appellants cite no convincing authority that the term "abuts" necessarily includes the right of access. Futhermore, Webster's 3rd New International Dictionary defines "abut" as simply meaning "to touch along a border" or "to border on." The subject property of this suit still borders on U. S. Route 30 South, even though access is denied. That being the case, the front lot line remains the same and the property remains zoned commercial.

There appears to be no worthwhile policy reason for this court to read a requirement of access into the word "abut" as used in the Marion Township Zoning Resolution. The well-recognized rule of interpretation that words used by a legislative authority will be given their common meaning unless otherwise clearly indicated, when applied in this case, results in our affirmance of the judgment below.

*Judgment affirmed.*

TROOP, GRAY, O'NEILL, HERBERT and DUNCAN, JJ., concur.

TROOP, J., of the Tenth Appellate District, sitting for TAFT, C. J.

GRAY, J., of the Fourth Appellate District, sitting for ZIMMERMAN, J. Because of the inability, "by reason of illness," of JUSTICE CHARLES B. ZIMMERMAN "to hear, consider and decide" this cause, JUDGE GRAY of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE ZIMMERMAN, and JUDGE GRAY did so and heard and considered this cause prior to the decease of JUSTICE ZIMMERMAN on June 5, 1969.