**WRAY, Appellant,**

v.

**FITCH et al., Appellees.**

[Cite as *Wray v. Fitch* (1994), 95 Ohio App.3d 249.]

Court of Appeals of Ohio,
Lorain County.

No. 93CA005701.

Decided June 15, 1994.

*Richard Makowski,* for appellant.

*Russell McLaughlin,* for appellees.

BAIRD, Presiding Judge.

This cause was heard upon the appeal of Jerry Wray, Ohio Director of Transportation, from a jury verdict awarded to Richard and Rita Fitch ("the Fitches") in the Lorain County Court of Common Pleas in the amount of $33,130 as compensation and damages in a land appropriation case. We reverse.

The Fitches owned five parcels of real property in Avon, Ohio. The parcels were used as a farm, and one parcel was developed with the Fitches' home and a farm market. Two of these parcels fronted State Route 83 and were divided by a creek.

This creek carried water drainage for State Route 83. The Director of Transportation planned to widen and deepen the creek and install a concrete

culvert for the creek under Route 83. In order to widen the creek by ten feet at its upper banks and to allow for future maintenance of the culvert, the Director of Transportation needed to acquire permanent easements over adjoining portions of the Fitches' two parcels of land.

In conjunction with the culvert project, the Director of Transportation also widened the shoulders of State Route 83. To prevent the public from going off the road into the expanded creek, the Director also installed a guardrail on an existing highway easement. This guardrail extended across part of the Fitches' land and blocked a driveway which had been used for farming vehicles.

A dispute arose over the amount of damages which the Fitches incurred as a result of this project, and the state, therefore, commenced appropriation proceedings. After trial before a jury, the Fitches were awarded $33,130. It is from this award that the Director of Transportation now appeals, asserting six assignments of error.

### Assignments of Error

"I. The trial court erred to the prejudice of appellant by its instruction to the jury that installation of guardrail within an existing highway right of way in front of undeveloped land constitutes a taking of property in the trial of an appropriation of a channel easement."

"II. The trial court erred to the prejudice of appellant by its instructions on the matter of damages resulting from the appropriation of a channel easement."

"III. The trial court erred to the prejudice of appellant in delivering a charge which repeatedly and incorrectly emphasized to the jury that installation of guardrail was either a taking or the basis for awarding damages to the residue in connection with the appropriation of a channel easement."

Appellant argues that he was prejudiced by several incorrect jury instructions. In defining the property which was taken from the Fitches, the court instructed:

"The property to be taken is in connection with a bridge improvement project, which includes the widening of a ditch, the taking of a channel easement across [the Fitches' property], the removal of an irrigation line and the erection of a guardrail. This may be referred to as 'the take.'"

The court defined "easement" as:

"An easement is the right of one to use land of another for a particular purpose. It does not confer ownership of the land, only the right to use the land for the purpose of, as in this case, the widening of a ditch, the taking of a channel easement and the erection of a guardrail."

Appellant argues that these instructions improperly included the erection of the guardrail as part of "the take," and told the jury to consider and include in its verdict an assessment of damages incurred by the Fitches due to the installation of the guardrail.

We first note that R.C. 163.05 requires that the state set forth in its petition for appropriation the exact nature and extent of the property or property rights which it seeks to appropriate. The petition for appropriation, in this case, did not seek to appropriate the Fitches' right of access to their property. Therefore, even if their access to the property was somehow blocked by the erection of the guardrail, they maintained their right of access and could require that the state remove the guardrail so that they could enter or exit their land by way of the fronting road.[1] The court's instruction that the erection of the guardrail was a part of "the take" was, therefore, erroneous, as it opened the door to the jury's consideration of damages which the Fitches did not, in fact, incur.

A consideration of the common law regarding property owners' right of access to their property also shows that the court's instructions were incorrect. It is axiomatic that landowners have a right to ingress and egress from their property. See, *e.g.*, *Branahan v. Hotel Co.* (1883), 39 Ohio St. 333, 334. The critical issue to determine in cases involving the right of access to property is "whether such right has been merely regulated for the public safety, or welfare or whether this regulation amounts to a compensable taking." *State ex rel. Morris v. Chillicothe* (Oct. 2, 1991), Ross App. No. 1720, unreported, 1991 WL 207246, citing Annotation, Abutting Owner's Right to Damages for Limitation of Access Caused by Conversion of Conventional Road into Limited–Access Highway (1972), 42 A.L.R.3d 13, 21, Section 2[a].

To be considered a part of the "taking" in an appropriation case, so that the abutting landowner would be entitled to compensation, the interference with access to or from the property must be substantial, material or unreasonable. *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, paragraph one of the syllabus; *Englewood v. Wagoner* (1987), 41 Ohio App.3d 324, 331, 535 N.E.2d 736, 743–744. "Substantial interference" occurs when an owner is "prevented from enjoying the continued use to which the property had been previously devoted." *Morris, supra,* citing *State ex rel. Pitz v. Columbus* (1988), 56 Ohio App.3d 37, 564 N.E.2d 1081. Furthermore, there is no compensable taking of the right to access as long as there is some available right of way to

---

1. There was no evidence, however, that the Fitches could not access the highway at a different point than that obstructed by the guardrail.

the property, albeit circuitous in nature. *Morris, supra,* citing Knepper & Frye, Ohio Eminent Domain Practice (1977) 161–163, Section 6.05.

■ In determining if there has been an interference with the right of access which would entitle the abutting landowner to compensation, only the improvements then on the property need be considered. *State ex rel. Cincinnati Garage Co. v. Bird* (1970), 25 Ohio Misc. 69, 75, 53 O.O.2d 290, 294, 263 N.E.2d 330, 334–335, citing *Akins v. Summit Cty. Bd. of Commrs.* (1929), 31 Ohio App. 129, 130, 166 N.E. 426, 426.

In this case, appellant installed a guardrail, on an existing highway easement, over the widened channel on the Fitches' property. The guardrail was installed as a safety precaution to prevent the travelling public from leaving the highway and falling into the channel. There was evidence that this guardrail blocked a driveway that the Fitches had used to access other farming land across State Route 83. However, there was no evidence that there were no other means of ingress and egress to the Fitches' property or that the guardrail created a substantial, material or unreasonable interference with physical access to or from the property.[2]

■ In appropriation cases, it is the court's duty to define the extent of "the taking" and the jury's duty to determine the amount of damages as a result of "the taking." R.C. 163.14. See, also, *Masheter v. Boehm* (1974), 37 Ohio St.2d 68, 66 O.O.2d 183, 307 N.E.2d 533, paragraph three of the syllabus. Where the court incorrectly instructs the jury as to the extent of the taking, the error is prejudicial as a matter of law. See *id.* at 77, 66 O.O.2d at 188, 307 N.E.2d at 540; *In re Appropriation for Hwy. Purposes* (1968), 15 Ohio App.2d 55, 63–66, 44 O.O.2d 109, 114–116, 238 N.E.2d 818, 823–825, affirmed (1969), 18 Ohio St.2d 214, 47 O.O.2d 445, 249 N.E.2d 48.

The trial court's instructions to the jury, in this case, were, at best, confusing. At worst, the instructions could be construed as including the erection of the guardrail as a part of the take and dictating that the jury include damages based upon the erection of the guardrail in its verdict. We find that these instructions were improper because the erection of the guardrail was included in the court's

---

**2.** There was also evidence that the lot could not be developed into residential lots in the future. Local zoning regulations required that a residential property have 100 feet of street frontage, not considering easements. Evidence was presented that the channel easement lessened one particular lot's street frontage to less than 200 feet. This prevented the Fitches from further developing the lot into two residential properties. While this may be relevant to the Fitches' damages (cf. *State ex rel. Pitz v. Columbus* [1988], 56 Ohio App.3d 37, 41–42, 564 N.E.2d 1081, 1085–1087), their plan to further develop that lot was not relevant to whether the guardrail substantially interfered with their access to the property.

definition of "the take," in contravention of the common law and the scope of "the take," as set forth in the petition for appropriation.

These assignments of error are sustained.

### Assignments of Error

"IV. The jury verdict and judgment upon it which award[s] the sum of $28,350 as compensation for property taken is not supported by sufficient evidence and is against the manifest weight of the evidence where testimony concerning valuation of the taking only ranges between $2,600 and $5,505."

"V. The jury verdict and judgment are contrary to the law."

"VI. The trial court erred to the prejudice of appellant in overruling his motion for new trial."

Appellant also argues that the jury verdict was against the weight of the evidence and was contrary to law. The evidence presented showed estimates of the damages for the property taken ranged from $2,600 to $5,505. The evidence presented also showed estimates of the damages to the residue of the property was approximately $36,500. On the verdict form, however, the jury awarded $28,350 for damages to the property taken and $4,750 for damages to the residue.

Although one could speculate that the jury merely transposed the two numbers when filling out the form, it is also possible that the jury was sufficiently confused so as to reach an amount for each category which was not supported by the evidence. Given our disposition of the first three assignments of error, however, we need not reach this issue. App.R. 12(A)(1)(c).

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

Cook and Dickinson, JJ., concur.