**[Cite as *Orchard Lane Ents., L.L.C. v. Dept. of Transp.*, 2017-Ohio-9398.]**

| | |
|---|---|
| ORCHARD LANE ENTERPRISES, LLC | Case No. 2016-00566 |
| Plaintiff | Magistrate Holly True Shaver |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF TRANSPORTATION | |
| Defendant | |

**{¶1}** Plaintiff brought this action alleging a temporary taking of property. The case proceeded to trial on the issues of both liability and damages.

**{¶2}** In May 2015, defendant, Ohio Department of Transportation (ODOT), began a construction project near plaintiff's rental property at the intersection of East South Street and Brown Street. Plaintiff asserts that the construction project resulted in a complete closure of access to its property. Plaintiff seeks damages for loss of income for the period of time that the property was unoccupied, and for the loss of value of the property when plaintiff sold it. Defendant asserts that plaintiff is not entitled to any damages, inasmuch as plaintiff has failed to show that the construction project resulted in a substantial, material, or unreasonable interference with access to plaintiff's property.

**{¶3}** The Tenth District Court of Appeals has set forth the legal framework for a claim of a taking of property without just compensation:

> When a landowner's property abuts a public highway, that owner "possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which *latter right* may not be taken away or destroyed or substantially impaired without compensation therefor." (Emphasis added.) *State ex rel. BDFM Co. v. Ohio Dept. of Transp.,* 10th Dist. Franklin No. 11AP-1094,

2013-Ohio-107, ¶ 15, quoting *State ex rel. Merritt v. Linzell,* 163 Ohio St. 97 (1955), paragraph one of the syllabus. However, an abutting property owner's right of access is generally subordinate to the public's right to use or improve a public street. *Salvation Army v. Ohio Dept. of Transp.,* 10th Dist. Franklin No. 04AP-1162, 2005-Ohio-2640, ¶ 16, citing *State ex rel. Schiederer v. Preston,* 170 Ohio St. 542, 544 (1960). Further, proof that property has been damaged, or rendered less desirable as a result of governmental activity, does not in itself constitute a taking so as to entitle a property owner to compensation. *Id.,* citing *State ex rel. Morris v. Chillicothe,* 4th Dist. Ross No. 1720 (Oct. 2, 1991). "The test of whether this right of access is so impaired as to require compensation is whether there is a substantial, material or unreasonable interference with an owner's or public's access to his property." *Id.,* quoting *State ex rel. B&B Co. v. Toledo,* 6th Dist. Lucas No. L-81-309 (Mar. 19,1982).

*Smith v. Ohio Dept. of Transportation*, 10th Dist. Franklin No. 15AP-521, 2015-Ohio-5240, ¶ 8.

{¶4} In addition, "'[s]ubstantial interference' occurs when an owner is 'prevented from enjoying the continued use to which the property had been previously devoted.'" *Salvation Army, supra*, ¶ 16, quoting *Wray v. Fitch*, 95 Ohio App.3d 249, 252 (9th Dist.1994).

{¶5} Josh Rounds testified that he is the president of Orchard Lane Enterprises, LLC, (Orchard), a company that acquires rental properties. Rounds testified that Orchard purchased the property at 500 East South Street, a single-family house near the University of Akron, on a land contract in November 2013 for $28,000. (Plaintiff's Exhibit 1.) According to Rounds, the property had tenants when Orchard purchased it, but those tenants moved out in December 2014. The property acquired new tenants in January 2015. (Plaintiff's Exhibit 3.) In May 2015, the construction project at issue resulted in a closure of the intersection of Brown and East South Streets. In June 2015, the tenants moved out, purportedly because of the construction project and their inability to access the house.[1] In November 2015, the intersection was re-opened, but

---

[1] None of the tenants testified at trial.

Rounds was unable to rent the property until April 11, 2016. (Plaintiff's Exhibit 4.) In May 2016, ODOT began construction in the area again and closed the same intersection. The new tenants moved out of the property shortly thereafter. In September 2016, plaintiff sold the property at a loss for $13,300. (Plaintiff's Exhibits 5-6.) Rounds testified that Orchard lost $700 per month when the property was vacant, for 10 months from June 2015 through April 2016, and again for four months from June through September 2016. Accordingly, Rounds seeks damages in the amount of $9,800 in lost rent/utilities expense, plus $14,700 which represents the loss that Orchard incurred when it sold the property, for a total of $24,500.

{¶6} To explain the impact that the construction project had on plaintiff's property, a description of the local streets is necessary. The block on East South Street where the property in question is located includes two other residential properties, the "Bill Denton Outreach Center," and the Summit County Engineer's Office. East South Street runs East and west. Brown Street runs north and south, and intersects East South Street on the west side. Prior to the construction project, Spicer Street also ran north and south, under I-76, and intersected East South Street on the East side, near the Summit County Engineer's Office. A motorist could access plaintiff's property either by traveling on Brown Street or Spicer Street.

{¶7} The initial phases of the construction project permanently closed the portion of Spicer Street that ran under I-76 and intersected with East South Street. The project also eliminated access from Spicer Street to Johnston Street north of I-76. Ultimately, the block where plaintiff's property was located was turned into a cul-de-sac near the Engineer's Office. During the first stages of the project prior to May 2015, there was no access to plaintiff's property from Spicer Street. The only access was from the west.

{¶8} In May 2015, the intersection of Brown Street and East South Street was closed. A detour on East Crosier Street allowed access to the Engineer's Office. However, that detour did not lead to plaintiff's property. The issue in this matter is

whether ODOT's closure of the intersection of Brown and East South Streets resulted in a substantial, material, or unreasonable interference with plaintiff's access to its property at 500 East South Street.

{¶9} Rounds presented photographs of the intersection and surrounding area near the property during the construction project. Plaintiff's Exhibit 7 was taken by the property manager for Orchard on August 8, 2015. Rounds explained that the two photos in Exhibit 7 depict the intersection of Brown and East South Streets, looking north on Brown Street. The building depicted in the photograph to the right is the Outreach Center. Rounds testified that the intersection to access his property on this day was completely blocked, and that no vehicular traffic had access to the property. Rounds testified that Plaintiff's Exhibit 8 contains photographs that depict the intersection in May 2016, during the second time that the intersection was closed, looking East on East South Street. According to Rounds, the section of East South Street in front of his property was used to store dirt, construction materials, and the vehicles of construction employees. Plaintiff's Exhibit 8 also shows the embankment that was placed on Spicer Street when the street was reconfigured, and the area where East South Street was changed to a cul-de-sac in front of the Engineer's Office. Plaintiff's property is visible in the photographs, as is the driveway that accesses plaintiff's property from East South Street. Multiple vehicles are also depicted in the photographs. In other photographs included in Plaintiff's Exhibit 8, two barricades and a "Road Closed" sign are placed at the intersection; however, multiple vehicles are also parked along East South Street, and it appears that there is enough space on either side of the barricades for vehicles to access the street in front of plaintiff's property.

{¶10} Plaintiff's Exhibit 9, a photograph that was taken on July 10, 2016, depicts East South Street in front of plaintiff's property, with "road closed" signs and a "do not enter" sign at the intersection; however, despite the presence of the signs, the street is not completely blocked off. The first photograph in Plaintiff's Exhibit 10 was taken on

August 23, 2016, and depicts the intersection facing north on Brown Street. The photograph shows that there was a "no right turn" sign posted below the stop sign at the southeast corner of Brown and East South Streets, one "road closed" sign, and one orange and white barricade to the entrance of the block where plaintiff's property is located. Again, despite the road closed sign, the photograph shows that a vehicle could drive to the left of the sign to access the block. In contrast, in the same photograph, two road closed signs and two orange and white barricades are placed on Brown Street to block traffic from traveling north on Brown Street under I-76. The second and third photographs in Plaintiff's Exhibit 10 show Brown Street facing south. The photographs show that multiple road closed signs and barricades blocked traffic from accessing Brown Street to travel under I-76. Rounds testified that he would park his vehicle two blocks south of the property when he visited during the construction project.

{¶11} On cross-examination, Rounds testified that he did not attempt to contact ODOT to inquire about how long the construction project would last, or whether residents in the area were permitted to access the street outside his property despite the presence of road closed signs. Rounds conceded that a vehicle could access the road as shown in Plaintiff's Exhibit 10 even though the road closed sign was there. Rounds stated that a driver would have to take a circuitous route to access the property during the construction project. Rounds admitted that he did not know whether any of the vehicles in the photographs belonged to other residents on the block; he assumed that they belonged to the construction workers. However, he insisted that there was no way to access the property without passing the road closed/do not enter signs.

{¶12} Jason Young, PE, testified that he is employed by defendant as a Transportation Engineer 3, and that he oversaw the construction project at issue. According to Young, any complaints about the project would have been brought to his attention. Young testified that access to East South Street was maintained for the

residents during the project. To support his testimony Young referenced the construction documents regarding Phase 5 of the project, which state the following:

{¶13} "Phase 5 construction activities shall consist of the reconstruction of Brown and South Streets.

{¶14} "The contractor shall erect detour signs for the closure of Brown Street and South Street as shown on the detour plans. The contractor shall perform all work on Brown Street, South Street and Lamparter Street under full closures. *Access shall be maintained at all times to residents.* Access to the Summit County Engineer's Office shall be maintained via the drive off East Crosier Street." (Emphasis added.) (Defendant's Exhibit A.)

{¶15} Young stated that although signs were placed that stated, "Road Closed," residents were not prohibited from accessing their properties. Young testified that prior to beginning the project, a public presentation and town hall meetings were held, and weekly notices were sent to residents. Young testified that ODOT received no complaints from the residents on the section of the street where plaintiff's property was located, but he acknowledged that he did get complaints from other residents and businesses near the project. According to Young, he investigated those complaints and provided detour signs for affected businesses. Young testified that the contractor on the project, Karvo, had a duty to maintain access to residents. According to Young, the road closed signs did not prevent residents from parking on East South Street in front of their houses, rather, the signs were placed to signify that access to Spicer and Johnstown Streets was closed from East South Street. On cross-examination, Young testified that multiple notices were sent to the residents by the environmental section of ODOT, although he did not provide any such notices at trial.

{¶16} Upon review of the evidence presented at trial, the magistrate finds that plaintiff has failed to prove that ODOT substantially, materially, or unreasonably interfered with plaintiff's or plaintiff's tenants' access of ingress and egress to and from

plaintiff's property. The evidence shows that the intersection of Brown and East South Streets was closed in May 2015. However, the evidence also shows that ODOT's construction plans specifically state that access shall be maintained for residents. Although the photographs that plaintiff provided depict construction equipment, road closed signs, and do not enter signs, the photographs also depict multiple vehicles parked on the area of East South Street that abuts plaintiff's property. The magistrate finds that Rounds' testimony was not particularly credible or persuasive. Indeed, Rounds' failure to make any inquiry of ODOT to determine whether his tenants could access the property, coupled with the fact that ODOT's construction plans specifically state that access shall be maintained at all times for residents is persuasive to the magistrate that ODOT did not substantially interfere with plaintiff's access rights. The magistrate finds the testimony of Jason Young was credible and persuasive that plaintiff's tenants had access to the property during the construction project. Although plaintiff may have proven that its property was rendered less desirable as a result of the ongoing construction project, that alone does not constitute a taking so as to entitle it to compensation. "Merely rendering access less convenient or more circuitous does not by itself constitute 'substantial interference.'" *Salvation Army, supra,* ¶ 17. The magistrate finds that it was not unreasonable for ODOT to engage in the construction project to improve the area roadways. Accordingly, the magistrate finds that plaintiff has failed to prove any of its claims by a preponderance of the evidence, and judgment is recommended in favor of defendant.

{¶17} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a*

*finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
HOLLY TRUE SHAVER
Magistrate

cc:

Jack Morrison, Jr.                          Christopher P. Conomy
Jack W. Morrison, Jr.                       Assistant Attorney General
Key Building, Suite 1100                    150 East Gay Street, 18th Floor
159 South Main Street                       Columbus, Ohio 43215-3130
Akron, Ohio 44308-1322

**Filed December 8, 2017**
**Sent to S.C. Reporter 1/5/18**