THE STATE, EX REL. PITZ, SUCCESSOR TRUSTEE, APPELLANT, *v.*
CITY OF COLUMBUS, APPELLEE.

(No. 87AP-1225—Decided November 22, 1988.)

*Hill, Hill & Stanger* and *Philip C. Stanger; Thomas Connor & Associates* and *Roger L. Connor, Jr.,* for appellant.

*Ronald J. O'Brien,* city attorney, and *Glenn B. Redick,* for appellee.

WHITESIDE, P.J. Plaintiff, Fred Pitz, appeals from a judgment of the Franklin County Court of Common Pleas and raises six assignments of error as follows:

"1.   The trial court erred in refusing to issue findings of fact and conclusions of law with respect to plaintiff's first cause of action as requested by the plaintiff-appellant.

"2.   The trial court erred in failing to grant the writ of mandamus prayed for by the plaintiff-appellant in the first count of his amended complaint requiring the defendant-appellee to

issue the building permit applied for in 1985.

"3. The trial court erred in failing to find, as a matter of law, that the property of the plaintiff-appellant had been taken by the defendant-appellee, and that the plaintiff-appellant was entitled to compensation therefor.

"4. The trial court's decision was against the manifest weight of the evidence.

"5. The trial court erred as a matter of law in finding that the defendant-appellee was without authority to alter the floodway map or to grant the plaintiff-appellant a variance from the restrictions of Chapter 3385. of the Columbus City Code.

"6. The trial court erred in failing to find as a matter of law that the defendant-appellee's denial of all use of the plaintiff-appellant's property was a denial of the civil rights of the plaintiff-appellant pursuant to 42 U.S.C. Section 1983."

Plaintiff owns property located at the northwest corner of East Main Street and Noe-Bixby Road, with the Big Walnut Creek lying just to the west of that property. In 1969 and 1970, work was performed at that intersection in connection with a highway improvement which resulted in fill being added to plaintiff's property. The parties stipulate this fill caused a change in the elevation of the property.

In 1985, plaintiff sought a building permit from the city of Columbus which was denied because the city felt that any building on the site would violate the zoning code then in effect. Specifically, Sections 3385.07 and 3385.08 of the Columbus City Code relate to flood plain zoning and prohibit building any structure within a designated flood plain area.

The parties to this action in a joint stipulation of fact filed with the trial court stipulated in paragraph seven that "[t]he 1977 code as amended in 1984 did not and does not take into account the fact that the Pitz property had been significantly altered by the fill from the 1969-1970 highway construction project." In paragraph nine of that same document, the parties stipulated that:

"At the time of application for the building permit, the floodway map adopted by the City delineated the floodway at and around the Pitz property at the elevation of 764 1/2 feet and below. All portions of the Pitz property sought to be built upon by the plaintiff exceed the elevation of 766 feet."

Thus, the floodway for the Big Walnut Creek was at an elevation of 764.5 feet, while all of this time plaintiff's property was at an elevation of 766 feet.

After the city building inspector denied plaintiff a building permit, plaintiff appealed that decision to the State Board of Building Appeals ("BBA"). Based upon a survey by a registered surveyor, showing the proposed building elevation site to be beyond the limits of the Big Walnut Creek flood plain elevation of 764.5 feet, the BBA ordered the city to issue either a building permit or an adjudication order based solely on the Ohio Basic Building Code. No appeal and no action was taken by the city within the thirty-day period specified by the BBA. Plaintiff then filed this action in the Franklin County Court of Common Pleas. In count one, plaintiff requested the court to issue a writ of mandamus ordering the city to comply with the BBA's decision. Count two was a request for compensation based upon an alleged taking under the Fifth Amendment to the United States Constitution.

The case was tried before the court without a jury. In its findings of fact and conclusions of law, the court held

there had been no taking of plaintiff's property, and thus, no compensation was required. Not until plaintiff filed a motion for findings of fact and conclusions of law relating to the writ of mandamus did the trial court address that issue. In the decision and entry dated November 23, 1987, the court stated that plaintiff's motion was moot. The trial court granted a writ of mandamus pursuant to an 1987 application made by plaintiff and ordered that a building permit be issued pursuant to the 1987 application, essentially allowing plaintiff to complete an addition to the building sought to be built by the 1985 application. However, the trial court did not order a permit issued upon the 1985 application which was the subject of the BBA order.

At the outset, it should be noted that the parties have stipulated that neither party appealed the BBA decision, which ordered the city either to grant the building permit or to issue an order based upon the Ohio Basic Building Code. In addition, the city failed to comply with that order.

In the first assignment of error, plaintiff contends that the trial court erred because it refused to issue findings of fact and conclusions of law with respect to plaintiff's requested writ of mandamus. The trial court issued findings of fact and conclusions of law which related to plaintiff's claim for compensation based upon a taking. While it is true that this order did not specifically address the writ of mandamus requested by plaintiff, it did state in paragraph seven of the findings of fact that: "* * * Chapter 3385 of the Columbus City Code * * * controls development of land in the flood plain areas and generally prohibits construction therein." The court also stated that the flood plain maps could not be changed by the city of Columbus.

Civ. R. 52 provides that a trial court shall issue findings of fact and conclusions of law when requested by one of the parties. The rule further provides that "[a]n opinion or memorandum of decision * * * containing findings of fact and conclusions of law stated separately shall be sufficient * * *."

The court made findings of fact and conclusions of law even though they were not as clear as they should have been. By these findings and from the record, it is apparent that the trial court denied the building permit based upon a finding that the floodway map indicated plaintiff's property was within the flood plain. Even though the trial court's findings may be erroneous, there was sufficient compliance with Civ. R. 52. Accordingly, the first assignment of error is not well-taken.

In the second assignment of error, plaintiff contends that the trial court erred by denying the writ of mandamus requiring the city to issue the building permit applied for in 1985. That permit was denied by the city because "[the] project is in the Big Walnut Creek floodway area." Plaintiff then appealed that order to the BBA, which ordered the city to either issue a permit or an adjudication order based solely upon the Ohio Basic Building Code. The city did not comply with the BBA order nor did it appeal that decision.

The first issue is whether the BBA had jurisdiction to render its order. R.C. 3781.19 creates the BBA and states that it may "reverse or modify the order of the enforcing agency if it finds that the order is contrary to, or to a fair interpretation or application of Chapter 3781 * * *." Further, Section 4107.05(d) of the Columbus City Code provides that any appeal, including the denial of a building permit "regulated under the Ohio Basic Building Code[,] shall be to the Ohio

Board of Building Appeals." However, the city argues that plaintiff should not have been permitted to appeal to the BBA because the permit was denied pursuant to the Zoning Code, not the Ohio Basic Building Code, and thus, the BBA lacked jurisdiction.

That issue was addressed by the BBA, and it held that the zoning ordinances were not applicable in this case. The BBA specifically found as follows:

"* * * [T]he refusal of the city to conduct the necessary plain review was based on an error in the zoning limits * * * and therefore the [Z]oning [Code] is not applicable in this matter since the appellant has produced a survey made by an Ohio Registered Surveyor indicating that the building site is beyond the limits of the actual Big Walnut flood plain and that the proposed elevation of the building is above the maximum flood level as established in the area. * * *"

Not only were these the findings of the BBA, but all parties specifically stipulated that: "* * * [T]he floodway at and around the Pitz property [is] at the elevation of 764 1/2 feet and below. All portions of the Pitz property sought to be built upon by the plaintiff exceed the elevation of 766 feet." The basis for not issuing the building permit was because the land was within the designated flood plain, but the city has now stipulated that the land is *not* in fact in that flood plain; the BBA decision was correct. Therefore, the stated reason for not issuing the permit is nonexistent.

The city's position, however, is that zoning issues cannot be determined by the BBA since a building permit cannot be issued for a structure to be built and used in violation of applicable zoning law. Had the building inspector merely denied a zoning clearance, under Section 3305.01 of the Columbus City Code, the appro-

priate appeal would have been to the Board of Zoning Adjustment. See Chapter 3307 of the Columbus City Code. But such was not the case here. The building inspector denied plaintiff's application for a building permit, acting under the State Building Code, not the City Building Code, much less the City Zoning Code.

R.C. 3781.10(E) provides that the Board of Building Standards shall "[c]ertify municipal, township, and county building departments to exercise enforcement authority, to accept and approve plans and specifications * * *."

By the language of the statute, the state has delegated its authority to municipalities who in turn select a qualified individual for building inspector. When such person denies a building permit, he is acting under the authority of the state, not the municipality. Therefore, any appeal must necessarily be to the BBA, a state agency, pursuant to R.C. 3781.19.

Necessarily, the body charged with issuance of a building permit must first determine whether the structure sought to be built complies with applicable zoning regulations. If the structure complies with applicable zoning, the building permit can be issued. If the structure does not, the building permit should not be issued. Upon appeal from the denial of issuance of the building permit, the question of whether the permit was properly denied because of noncompliance with zoning is before the appellate board. The jurisdictional issue presented, therefore, is not total lack of jurisdiction over the appeal from denial of the building permit, but rather, the alleged erroneous exercise of jurisdiction so as to render a decision upon an alleged faulty basis—namely, that the structure sought to be built complied with applicable zoning. As such, the decision as to "jurisdiction" was at most

voidable. The BBA decision is not void and is binding upon the city even if it were voidable since the city failed to appeal.

Since the city contends the BBA lacked jurisdiction over the zoning issue, the appropriate remedy would have been to appeal the BBA order. R.C. 119.12 provides that "any party adversely affected by any order of any agency * * * may appeal * * * to the [designated] court of common pleas * * *." As stated previously, the city did not appeal the decision of the BBA, and the time to file such an appeal has long since run.

Based on the foregoing, even if the validity of zoning was not a proper issue for the BBA to determine, a writ of mandamus will be granted to plaintiff. That writ shall order the city to comply with the BBA's order, *viz.,* either: (1) issue the building permit which plaintiff applied for in 1985, or (2) issue an adjudication order denying the permit based on the Ohio Basic Building Code, as it existed in 1985.

As the Ohio Supreme Court held in *Gibson* v. *Oberlin* (1960), 171 Ohio St. 1, 5-6, 12 O.O. 2d 1, 3, 167 N.E. 2d 651, 654, "[s]ubsequent legislation enacted pending applicant's attempted enforcement of such right through administrative or legal channels cannot deprive him of the right. * * *" Therefore, the determination of whether plaintiff should receive a building permit must be based on the 1985 Ohio Basic Building Code. Accordingly, the second assignment of error is well-taken.

In the third assignment of error, plaintiff contends that his property was "taken" by the city, and, thus, he is entitled to compensation. It is his contention that this "taking" occurred as a result of the erroneous inclusion of his property within the flood plain of the Big Walnut Creek which prevented him from obtaining a building permit.

The Fifth Amendment to the United States Constitution provides "* * * nor shall private property be taken for public use, without just compensation." In order for compensation to be required in a particular case, there must be a taking. The Ohio Supreme Court has defined "taking" in accordance with the United States Supreme Court's interpretation of that word. In *Smith* v. *Erie RR. Co.* (1938), 134 Ohio St. 135, 142, 11 O.O. 571, 574, 16 N.E. 2d 310, 313, the court held "* * * there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking." Later, in *McKee* v. *Akron* (1964), 176 Ohio St. 282, 27 O.O. 2d 197, 199 N.E. 2d 592, the court gave more of a negative definition to the term; something more than loss of market value or loss of the comfortable enjoyment of the property is needed to constitute a taking. Specifically, the court stated, "* * * governmental activity must physically displace a person from space in which he was entitled to exercise dominion consistent with the rights of ownership. * * *" *Id.* at 285, 27 O.O. 2d at 198, 199 N.E. 2d at 594. Thus, in order for a governmental activity to constitute a "taking," there must be substantial interference with the owner's property rights.

While it is true that the zoning restrictions did not affirmatively permit plaintiff to build on his property, this does not constitute a "taking." Plaintiff may have been inconvenienced by not being able to build on his property until completion of the legal process, but mere inconvenience is not sufficient. Even if plaintiff were able to show that he suffered a monetary loss due to a decline in market value of his property, under the rule of *McKee, supra,* it is still not enough to con-

stitute a "taking" which would require compensation. Here, there was no deprivation of continued enjoyment of use to which the property had been devoted. Rather, the issue was and is whether plaintiff can create a new use of his property.

Plaintiff also argues that the flood plain regulatory ordinance constitutes a *pro tanto* taking of his property. While it is true that there need not be a taking of an owner's entire use of his property, there still must be a taking. See *Mansfield* v. *Balliett* (1902), 65 Ohio St. 451, 63 N.E. 86. Under the principles discussed previously, there has been no taking, *pro tanto* or otherwise, of plaintiff's property. Plaintiff relies on *Kermetz* v. *Cook-Johnson Realty Corp.* (1977), 54 Ohio App. 2d 220, 8 O.O. 3d 375, 376 N.E. 2d 1357, to support his position. In that case, however, there was a physical invasion of the plaintiff's property. The court gave examples of what constitutes "taking": "* * * where the governmental action deprives the owner access to his property * * * or an *encroachment* on the land which results in a *'pro tanto* taking' * * *." (Emphasis added.) *Id.* at 226, 8 O.O. 3d at 378, 376 N.E. 2d at 1361.

Plaintiff also relies heavily on the Supreme Court's decisions in *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles, California* (1987), 482 U.S. 304, and *Nollan* v. *California Coastal Comm.* (1987), 483 U.S. 825. This reliance is misplaced as both cases are distinguishable from this one on their facts.

In *First English Evangelical Lutheran Church, supra,* the plaintiff's land was flooded, and its buildings were destroyed. Before it could rebuild, a zoning ordinance was enacted which prohibited plaintiff from rebuilding. The Supreme Court held that this action constituted a "taking," even if only temporary, therefore re- quiring compensation to be paid to plaintiff. The key distinction is that *First English Evangelical Lutheran Church* involved a continuation of the preexisting use of the property, while plaintiff's property had no preexisting use other than as vacant land.

In *Nollan, supra,* as a condition of obtaining a building permit, the land-owners were required to provide lateral access for the public to pass across the property. The distinguishing feature of *Nollan* is that the government was taking an easement across plaintiff's property without compensation. There was an actual public encroachment onto the plaintiff's land in that case, which obviously amounts to a taking. The court held that the California Coastal Commission could not condition the building permit upon the granting of a "public easement" without providing compensation therefor under the circumstances involved. As stated previously, here, plaintiff's land was not "taken" as there was no substantial interference with his dominion and control of the property, no denial of access or the right to continue a prior use of his property, and no dispossession at all. Without a "taking," no compensation is required. Therefore, plaintiff's third assignment of error is not well-taken.

In his fourth assignment of error, plaintiff contends that the trial court's decision was against the manifest weight of the evidence, and, in the fifth assignment of error, he contends that the trial court erred in finding that the city did not have the authority to change the floodway map. Because these two errors are similar and inter-related, they will be considered together.

The standard for reviewing a trial court's decision contended to be against the manifest weight of the evidence is stated in the syllabus of *C.E. Morris Co.* v. *Foley Constr. Co.*

(1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, as follows:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

Plaintiff takes issue with the trial court's finding of fact number four which states:

"* * * Plaintiff did not provide sufficient information in a proper form and in a timely manner to the defendant so that the defendant could submit the information to the proper federal agency so that a correction could be made to the flood plain map."

The record does not indicate exactly what information the city desired or needed. Plaintiff contends that giving the city the transcript of the BBA's decision along with a survey done by an Ohio registered surveyor showing that the elevation of the plaintiff's property was at least one and one-half feet above the flood plain amounted to sufficient information. More importantly, the city stipulated that the elevation of the Big Walnut Creek flood plain was 764.5 feet while they also stipulated that the elevation of the plaintiff's property was 766 feet. Having so stipulated, it follows that the city has sufficient information to make such a determination. The same information could be used to change the floodway map. Even if additional information were required by the city, it has not made it clear as to the nature of that information. The trial court did not properly take the stipulations (which clearly show that the city had sufficient information to change the map) into account in making that finding of fact. Furthermore, once the issue was called to its attention, it was incumbent upon the city to take the appropriate action and attain the necessary information or at least to notify the plaintiff of the specific information desired and the nature thereof. The city did neither. Therefore, finding of fact four is against the manifest weight of the evidence as there is no credible evidence, much less "competent, credible evidence," to support such a finding.

Plaintiff also contends in his fourth and fifth assignments of error that the trial court erred in determining that the city was without authority to amend the floodway map. As stipulated by all parties, the map inaccurately indicates that plaintiff's property was below the elevation of the Big Walnut Creek floodway.

Pursuant to Section 4001 et seq., Title 42, U.S. Code, Congress adopted a national flood insurance program contained in part in Parts 59 and 60, Title 44, C.F.R. In order for a community to be eligible for the program, the community must adopt a flood management plan consistent with the federal criteria and objections, Sections 59.2 and 60.2(g), Title 44, C.F.R. The purpose of the federal criteria and the intent of Congress in enacting the program were to uniformly require communities who wish federally subsidized flood insurance to adopt zoning regulations maintaining established floodways along inland waters. It was not the intent of Congress for these flood zoning regulations to apply to land clearly not within the established floodways.

The city contends that it could not change the floodway map as the federal regulations did not permit such change without prior approval. This contention fails on two accounts.[1]

First, the federal regulations re-

[1] Additionally, the federal program, although desirable, was not one the city was required to participate in by federal law or otherwise unless it wished federally subsidized flood insurance for the community.

quire that the community adopt "* * * flood plain management regulations based on data provided by the Administrator." (The "administrator" refers to the Federal Insurance Administrator. Section 59.1, Title 44, C.F.R.) Section 60.2(h), Title 44, C.F.R. The flood plain map used by the city is based upon a 1965 United States Geological Survey. The city has not demonstrated that it used data supplied by the administrator to develop the flood plain maps. Even if the 1965 survey were obtained from the administrator, it does not constitute data provided by him. Furthermore, the 1965 data that was used obviously could not reflect the 1969-1970 highway fill which all parties stipulate changed the elevation of plaintiff's property. The most current data are always the best source of information, and the city has a duty to use more current data than a 1965 map, especially since it knew of the topographical changes made in 1969 and 1970, having been involved with the state in the highway project.

The city relies upon Section 60.2(h), Title 44, C.F.R., which requires prior approval of the administrator before the community "* * * adopt[s] and enforce[s] flood plain management regulations based upon *modified* data reflecting natural or man-made physical changes." (Emphasis added.) This section is inapplicable here because there is no "modified data"; plaintiff's property, as stipulated by all parties, is *not* in the Big Walnut Creek flood plain. The data used to establish the flood plain were incorrect when used and remain so; therefore, any change to that map would be merely a correction based not upon *modified* data, but upon the correct original data. That correction is not the result of any subsequent "natural or man-made physical changes," but results from correcting

reliance upon outdated, inaccurate data, rather than current data at the time the ordinance was adopted. Therefore, we hold that the city of Columbus had both sufficient information and the authority to correct the erroneous "flood plain map."

The last issue plaintiff raises in his fourth assignment of error is that the trial court erred in finding that he had offered no evidence of the denial of all use of his land. This issue is addressed in the third assignment of error, where we held there had been no "taking" under the Ohio Supreme Court's interpretation of that word. The city only refused to issue a building permit for a specific structure but did not prevent plaintiff from otherwise using its land. Accordingly, the trial court's finding of fact regarding the denial of all the use of plaintiff's land was not against the manifest weight of the evidence.

Accordingly, in plaintiff's fourth assignment of error, the first two issues regarding the city's authority to correct the erroneous flood plain map are well-taken, but the third issue regarding the evidence of a "taking" is not well-taken. Plaintiff's fifth assignment of error, regarding again the city's authority to correct the flood plain map, is well-taken.

In his sixth assignment of error, plaintiff contends that the trial court erred in failing to find that the city's denial of all the use of his land violated his civil rights pursuant to Section 1983, Title 42, U.S. Code. In his amended complaint, plaintiff did not specifically allege a violation of his civil rights under Section 1983. Paragraph twenty-three of his amended complaint alleges that Chapter 3385 of the Columbus City Code, as applied to the plaintiff's property, is an unconstitutional taking of his property without compensation. This allegation is not a civil rights claim pursuant to Section 1983, Title 42, U.S. Code.

It is well-settled that a reviewing court will not ordinarily consider an issue that was neither raised nor tried in the court below. Such an issue is not properly before the reviewing court. See *Blausey* v. *Stein* (1980), 61 Ohio St. 2d 264, 266-267, 15 O.O. 3d 268, 269-270, 400 N.E. 2d 408, 410. Furthermore, the Ohio Supreme Court in *State, ex rel. Specht,* v. *Oregon City Bd. of Edn.* (1981), 66 Ohio St. 2d 178, 182, 20 O.O. 3d 191, 194, 420 N.E. 2d 1004, 1007, held that "[i]t is well founded that a constitutional question can not be raised in a reviewing court unless it appears it was urged in the trial court. * * *"

It is clear from the record that plaintiff did not raise a Section 1983 claim until his appeal to this court. His complaint contained no mention of this claim, nor did his amended complaint. In the trial court's findings of fact and conclusions of law, there was no determination regarding the denial of plaintiff's civil rights. The first time such a claim was raised was in the briefs in this court. Because the issue was not raised in the lower court, it is not properly before this court now. Accordingly, plaintiff's sixth assignment of error is not well-taken.

For the foregoing reasons, the first, third and sixth assignments of error are overruled, as is the fourth assignment of error with respect to the finding that plaintiff had not been denied all use of his land, and the second and fifth assignments of error are sustained as is the fourth assignment of error except with respect to the denial-of-use issue. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to modify its judgment so as to grant and issue a writ of mandamus ordering the defendant to comply with the State Board of Building Appeals order and either to issue the requested building permits or to issue an adjudication order based upon the 1985 Ohio Basic Building Code, in addition to the relief previously granted plaintiff.

*Judgment reversed and cause remanded with instructions.*

STRAUSBAUGH and REILLY, JJ., concur.