[The State ex rel.] BSW Development Group, Appellant,
*v.* City of Dayton et al., Appellees.

[Cite as *State ex rel. BSW Dev. Group v.*
*Dayton* (1998), 83 Ohio St.3d 338.]

(No. 98–473—Submitted August 19, 1998—Decided October 14, 1998.)

*Dwight D. Brannon & Associates, Dwight D. Brannon* and *Walter J. Krygowski,* for appellant.

*Freund, Freeze & Arnold, Neil F. Freund* and *Shawn M. Blatt,* for appellees.

**Per Curiam.** BSW asserts that the court of appeals erred by denying a writ of mandamus to compel appellees to commence appropriation proceedings. Mandamus is the appropriate vehicle for compelling appropriation proceedings by public authorities where an involuntary taking of private property is alleged. *State ex rel. Levin v. Sheffield Lake* (1994), 70 Ohio St.3d 104, 108, 637 N.E.2d

319, 323, citing *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, paragraph three of the syllabus. In these actions, the court, as the trier of fact and law, must determine whether the private property had been taken by the public authority. *Levin*, 70 Ohio St.3d at 108, 637 N.E.2d at 323. The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution; see, also, R.C. Chapter 163.

In its various propositions of law, BSW contends that the court of appeals erred by (1) limiting the special master's evidentiary hearings to a single issue, (2) placing the burden of proof on BSW, (3) concluding that the evidence did not establish a compensable taking, (4) refusing to grant BSW's request for a declaratory judgment on the constitutionality of Dayton's historic preservation ordinances, and (5) declining to grant the writ based on Dayton officials' fraudulent and intentional misrepresentation regarding eligibility of the Wilcon Building for landmark status.

For the following reasons, however, BSW's contentions are meritless, and we affirm the judgment of the court of appeals.

First, the court of appeals properly limited its special master's evidentiary hearings to the single issue of whether BSW had been denied all economically viable use of its property during the period that the city improperly denied the demolition permit. BSW argues that it established a permanent taking of its Wilcon Building property in which the city physically invaded the property. In cases of either physical invasion of the land or the destruction of a fundamental attribute of ownership like the right of access, the landowner need not establish the deprivation of *all* economically viable uses of the land. See, *e.g., Lucas v. South Carolina Coastal Council* (1992), 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798, 812–813; *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus.

Notwithstanding BSW's assertions, appellees established that any alleged taking was not permanent. After the court of appeals' May 1993 judgment holding that BSW should have been granted the certificate of appropriateness for the demolition permit, the city advised BSW that the Landmark Commission would issue a certificate of appropriateness for the requested demolition upon satisfaction of certain ministerial requirements. But BSW refused to seek the demolition permit at that time, although appellees would not have opposed its issuance.

The evidence also established that any alleged taking resulted from neither physical invasion of BSW's land nor destruction of a fundamental attribute of BSW's ownership, such as the right to access public streets or highways on which

the land abuts. See, *e.g.*, *Lucas*, 505 U.S. at 1015, 112 S.Ct. at 2893, 120 L.Ed.2d at 812–813; *OTR*, 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus. Dayton's attempts to safeguard the public after BSW essentially abandoned the Wilcon Building did not restrict BSW's ability to access and use the property. And BSW cites no persuasive authority that mandates a holding that the right to demolish a building and construct a new building is " 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.' " *Dolan v. Tigard* (1994), 512 U.S. 374, 384, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304, 316, quoting *Kaiser Aetna v. United States* (1979), 444 U.S. 164, 176, 100 S.Ct. 383, 391, 62 L.Ed.2d 332, 344 (involving issues of access, *i.e.*, the right to exclude others); *OTR* (right of access); see, also, *Corn v. Lauderdale Lakes* (C.A.11, 1996), 95 F.3d 1066, 1074–1075, where the court held that the developer had to prove that the alleged taking deprived him of all economically viable uses of land because his land had not been physically invaded and he did not "contend that the right to build a mini-warehouse is a fundamental attribute of ownership."

Therefore, given BSW's failure to properly raise any constitutional issue of whether the Dayton historic preservation ordinances substantially advance legitimate state interests, as discussed *infra*, BSW could only establish entitlement to appropriation proceedings if it established that appellees' denial of the demolition permit denied BSW all economically viable use of the Wilcon Building property. In other words, "in order for the landowner to prove a [regulatory] taking, he or she must prove that the application of the ordinance has infringed upon the landowner's rights to the point that there is no economically viable use of the land and, consequently, a taking has occurred for which he or she is entitled to compensation." *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 210, 690 N.E.2d 510, 512.

More specifically, the United States Supreme Court held as follows regarding when the denial of a property-use permit constitutes a regulatory taking:

"A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, *even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred.*" (Emphasis added.) *United States v. Riverside Bayview Homes, Inc.* (1985), 474 U.S. 121, 127, 106 S.Ct. 455, 459, 88 L.Ed.2d 419, 426.

Based on the foregoing, the court of appeals appropriately restricted the scope of its special master's task to resolving the sole issue of whether the denial of the demolition permit deprived BSW of all economically viable use of its property.

Second, the court of appeals did not err by placing the burden of proof on BSW. BSW had the burden of proving entitlement to extraordinary relief in mandamus, including the establishment of a clear legal right to appropriation proceedings because of the deprivation of all economically viable use of the land. See, *e.g., State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 173, 176–177, 689 N.E.2d 962, 965; *Goldberg Cos.,* 81 Ohio St.3d at 210, 690 N.E.2d at 512; *Ketchel v. Bainbridge Twp.* (1992), 79 Ohio App.3d 174, 179, 607 N.E.2d 22, 25.

Third, the court of appeals correctly concluded that BSW did not establish a compensable taking. The court of appeals held that the denial of BSW's demolition permit did not deprive it of all economically viable use of the Wilcon Building property. Reviewing courts defer to a lower court's factual determination if it is supported by competent, credible evidence. *State ex rel. Fleming v. Rocky River Bd. of Edn.* (1997), 79 Ohio St.3d 200, 205, 680 N.E.2d 981, 984–985.

Here, competent, credible evidence supports the court of appeals' holding. The city's chief building official testified that the Wilcon Building is structurally sound and that building tenants would not require new certificates of occupancy if they continued previous tenants' uses. In addition, at least two-thirds of the building had been used by at least two different businesses for several years just before the denial of the demolition permit, and that portion of the building could have continued to have been used by those businesses if they had not vacated the building. See *The Shopco Group v. Springdale* (1990), 66 Ohio App.3d 702, 708, 586 N.E.2d 145, 150, holding that a "deprivation of * * * economic or development rights does not amount to a denial of all use of one's property, including the rights of possession and use of the property." The property continued to be used for parking and storage after the denial of the permit. Further, any serious hazards that required repair prior to leasing the building existed before the permit denial. Finally, "something more than loss of market value or loss of the comfortable enjoyment of the property is needed to constitute a taking." *State ex rel. Pitz v. Columbus* (1988), 56 Ohio App.3d 37, 41, 564 N.E.2d 1081, 1086; see, also, *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.* (1987), 482 U.S. 304, 320, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250, 267.

Fourth, the court of appeals did not err by refusing to consider BSW's request for a declaratory judgment on the constitutionality of Dayton's historic preservation ordinances. BSW did not request this relief in its complaint and did not amend its complaint to include this claim. When BSW raised this constitutional issue in its initial merit brief and motion for summary judgment in the court of appeals, appellees did not expressly or impliedly consent to litigation of the claim. Therefore, the court of appeals did not need to consider this constitutional claim. *State ex rel. Massie v. Gahanna–Jefferson Pub. Schools Bd. of Edn.* (1996), 76

Ohio St.3d 584, 589, 669 N.E.2d 839, 843. BSW does not assert that it properly pled this claim in the court of appeals.

In addition, while the constitutionality of a statute or ordinance may in certain limited circumstances be challenged by mandamus, see *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 341, 673 N.E.2d 1351, 1354, courts decide constitutional questions only when "absolutely necessary." *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 28, 630 N.E.2d 329, 331. Resolution of the constitutionality of Dayton's historic preservation ordinances was not absolutely necessary here because, as the court of appeals concluded, any alleged taking resulted from the improper denial by appellees of the demolition permit under the pertinent ordinances rather than the unconstitutionality of those ordinances. Therefore, the constitutional issue was not properly before the court of appeals in that the true objective of BSW's request was a declaratory judgment, which the court of appeals lacked jurisdiction to grant. *Wright v. Ghee* (1996), 74 Ohio St.3d 465, 466, 659 N.E.2d 1261, 1262. See, *e.g.,* BSW's summary judgment motion, where it claimed entitlement to a "declaration of the constitutionality of the [historical preservation ordinances], in whole and/or in part, and in its application to the entire public and/or BSW, under the circumstances at bar or in its general application to all."

Finally, BSW also waived its claim that it was entitled to the requested writ of mandamus because of appellees' fraudulent and intentional misrepresentation by not properly pleading or raising this claim in the court of appeals. *Massie,* 76 Ohio St.3d at 589, 669 N.E.2d at 843. Reviewing courts do not consider questions that have not been presented to the court whose judgment is sought to be reversed. *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 81, 679 N.E.2d 706, 709.

Based on the foregoing, the court of appeals properly denied BSW's request for extraordinary relief in mandamus. Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.