This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments to this court. Defendants-Appellants, Rose and Joseph Kalmer (hereinafter collectively "Kalmers"), appeal the trial court's decision in favor of Plaintiff-Appellee, Thomas Bosak, Jr., dba Bosak Kitchen and Bath Installation (hereinafter "Bosak"), on his breach of contract and libel claims in the amount of $25,000 in compensatory damages and $25,000 in punitive damages. In addition to a procedural issue, the merit issues before us for consideration are: 1) whether the publication at issue was libelous; and, 2) whether the punitive damages award was supported by the evidence. Because we conclude the trial court's finding that the publication was defamatory, and made with actual malice so to such an extent as to warrant punitive damages was correct, for the following reasons, we affirm the trial court's decision.
In January 1996, the Kalmers sought to have their flooring replaced. They visited Prizant's in order to purchase Pergo flooring and have it installed. Pergo is a laminated flooring surface which looks like a wooden floor. A salesman from Prizant's contacted Bosak, an independent contractor, about installing the flooring. After Bosak visited the Kalmers' home to take measurements for the installation, the Kalmers decided to install a hardwood floor instead. Prizant's did not deal in hardwood floors. However, Bosak agreed to install the hardwood floor after Rose Kalmer asked him to do so.
On March 19, 1996, Bosak began work at the Kalmers' residence. After about 10-11 days on the job, when the installation was almost complete, the Kalmers informed Bosak they did not wish him to complete the job. Around August 1, 1996, the Kalmers began distributing flyers which impugned Bosak's ability and integrity. These flyers stated:
"WARNING! You may get screwed at Prizant's if your installation is done by Thomas Bosak, Jr. of Bosak Kitchen and Bath. He is employed by Prizant's and they know he is unethical. Beware and shop elsewhere!!!"
The flyers also contained a large picture of a bolt.
The Kalmers placed the flyers in the Prizant's store, in its parking lot on car windows, in mailboxes and newspaper boxes in Bosak's neighborhood, and on car windows at two local malls. The Kalmers returned to Prizant's the day after they first placed the flyers, and attempted to place them again. They were asked to leave and there was a verbal altercation between Joseph Kalmer and Bosak in Prizant's parking lot. As a result of this publicity, Prizant's did not send Bosak any work for six months. Furthermore, Bosak suffered emotional distress which ultimately resulted in an ambulance trip to an emergency room.
Bosak filed a complaint against the Kalmers which was later amended to include claims for breach of contract and defamation. After discovery, the matter proceeded to a bench trial before Magistrate Bernard Wilkes. However, while the proceeding was recessed to a later date, Magistrate Wilkes died. Thereafter, the proceeding continued before Visiting Judge Cacioppo. On January 16, 2001, the trial court entered its judgment, dismissing the Kalmers' counterclaim and finding for Bosak on both his breach of contract claim in the amount of $511 and his defamation claim in the amount of $25,000. The trial court also awarded Bosak $25,000 in punitive damages.
On appeal, the Kalmers assert three assignments of error:
"The trial court erred in finding the publication in question was libelous because: 1) the publication contained no critical or defamatory statements which were untrue or false; 2) the Plaintiff-Appellee failed to establish by clear and convincing evidence that Defendants-Appellants were at fault in the publication thereof; 3) Defendants-Appellants were privileged in commenting on matters regarding which they had an interest and Plaintiff-Appellee did not defeat the privilege by establishing actual malice; and 4) Defendants-Appellants had a constitutional and common law right to freely express their opinion."
"The trial court erred in awarding punitive damages without Plaintiff-Appellee establishing his entitlement thereto by clear and convincing evidence."
"The trial court erred in proceeding with trial without certifying in the record that it had familiarized itself with the entire record, including testimony heard by a previously appointed magistrate-judge."
We conclude the Kalmers made a false statement rather than express an opinion, as established by clear and convincing evidence. Further, there was competent, credible evidence supporting the trier of fact's conclusion that the Kalmers acted with actual malice as a basis for punitive damages. Finally, the record clearly indicates the trial court did review the record of proceedings that transpired prior to being assigned the instant case. Accordingly, the trial court's decision is affirmed.
In their first assignment of error, the Kalmers assert the trial court erred in finding the flyer was defamatory for four reasons: 1) the flyer did not contain any false statements; 2) Bosak did not prove his case by clear and convincing evidence; 3) the Kalmers had a qualified privilege to publish the statements in the flyer; and, 4) the statements were opinions and not statements of fact and, therefore, the Kalmers had the constitutional right to make these statements.
"In Ohio, `libel' is defined generally as a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." A B-Abell Elevator Co. v. Columbus/Cent. OhioBldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283.
"[T]he determination of whether words are defamatory is a question of law to be decided by the court." Sethi v. WFMJ Television, Inc. (1999),134 Ohio App.3d 796, 804, 732 N.E.2d 451.
The Kalmers initially argue the flyer made no false statement of fact. However, in their brief the Kalmers admit the statement "They [Prizant's] know he is unethical" could be an actionable statement. Furthermore, the uncontradicted testimony of Thomas Bush, a sales person with Prizant's for twenty-four years, was that he believed Bosak was a very ethical individual who did superior work. Therefore, the statement in the flyer that Prizant's knew Bosak was unethical is a false statement.
The Kalmers next argue this was a statement of opinion and not of fact.
"When determining whether speech is protected opinion a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." Vail v. Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279, 649 N.E.2d 182, syllabus.
These factors focus on whether a reasonable reader, not the publisher, would think the allegedly libelous statement is a false statement of fact. McKimm v. Ohio Elections Comm., 89 Ohio St.3d 139, 144,2000-Ohio-118, 729 N.E.2d 364. This is a fluid standard and the weight given to any particular factor must vary depending upon the circumstances presented. Vail at 282. "This analysis is not a bright-line test, but does establish parameters within which each statement or utterance may stand on its own merits rather than be subjected to a mechanistic standard." Id.
In Vail the plaintiff was a candidate for the Ohio Senate at the time the defendant published an article about her. The article appeared in the forum section of the newspaper and was captioned "Commentary." The Ohio Supreme Court determined the general context of the article was opinion and the general tenor of the article was sarcastic, thus "more typical of persuasive speech than factual reporting." Id. Additionally, the specific language used in the article would be understood to be "one person's attempt to persuade public opinion." Id. at 283. Finally, the court noted the statements were not verifiable. Id. The court concluded the column constituted an opinion and, thus, was constitutionally protected.
Under the first factor in the Vail test, we must determine "whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and opinion." Id. at 282. The Kalmers argue "the words obviously were an emotional diatribe, full of expletive and hyperbole, not reasonable or factual" and, therefore, no reasonable person would have taken them to be factual statements. However, in this case the specific language at issue, "He is employed by Prizant's and they know he is unethical," is clearly language which normally conveys information of a factual nature. Nor is it "full of expletive and hyperbole."
This language is similar to that in Leal v. Holtvogt (1998),123 Ohio App.3d 51, 702 N.E.2d 1246, where Mrs. Leal contacted Mr. Holtvogt's customers and told them Mr. Holtvogt had lied to the Leals about a horse's value, show records, and stud fees, and that Mr. Holtvogt "was cheating her out of breeding fees for their partnership." Id. at 80. In Leal, the Second District found "an ordinary person would view these statements as fact, not mere opinion, because their meaning is clearly ascertainable, not ambiguous." Id.
Second, we must consider whether the flyer's statements were verifiable. "When the statement lacks a plausible method of verification, a reasonable [person] will not believe that the statement has specific factual content." Condit v. Clermont Cty. Review (1996),110 Ohio App.3d 755, 760, 675 N.E.2d 475. Clearly, this information is verifiable under Vail's second factor as all anyone needs to do is call Prizant's and ask Prizant's if they know Bosak is unethical.
The final two Vail factors require an examination of the general and broad contexts of the statements. In other words, the language of the entire flyer may signal a specific statement which, sitting alone would appear to be factual, is in actuality a statement of opinion. See DeVitov. Gollinger (1999), 133 Ohio App.3d 51, 726 N.E.2d 1048. The Kalmers once again argue the context reflects "an obvious expression of opinion by unhappy, emotional and dissatisfied customers."
As noted above, in Leal, Mrs. Leal called people on the phone and told them Mr. Holtvogt had lied to her. The court found "Mrs. Leal's anger and hostility might lead a reasonable person to discount some of her accusations, it is also conceivable that a reasonable person would just assume that he or she would be angry, too, if he or she had been tricked in these ways." Leal at 81. Similarly, the flyer demonstrates its author was seriously concerned by Bosak's alleged unethical practices. However, an examination of the entire flyer does not necessarily leave the impression that the Kalmers were merely expressing their opinions. Rather, the emotion expressed in the flyer may lead a reasonable reader to conclude there was a serious reason for these alleged factual statements. In light of these Vail factors it is clear that, to the reasonable reader, the flyer could contain statements of fact rather than opinion.
As for the Kalmers' third argument, we note the Kalmers never raised the issue of qualified privilege before the trial court. "Reviewing courts do not consider questions that have not been presented to the court whose judgment is sought to be reversed." State ex rel. BSWDevelopment Group v. City of Dayton (1998), 83 Ohio St.3d 338, 345,699 N.E.2d 1271. As this issue was never tried in the trial court, we will not discuss its merits on appeal.
Finally, the Kalmers argue Bosak failed to prove the Kalmers were at fault by clear and convincing evidence.
"If a private figure plaintiff has established a prima facie showing of defamation and the only issue remaining is fault, the plaintiff's burden is then to prove, by clear and convincing evidence, that the defendant did not act reasonably in attempting to discover the truth or falsity of the publication." Franks v. The Lima News (1996), 109 Ohio App.3d 408,412, 672 N.E.2d 245, citing Lansdowne v. Beacon Journal Pub. Co. (1987),32 Ohio St.3d 176, 512 N.E.2d 979; see also Davis v. Jacobs (1998),126 Ohio App.3d 580, 710 N.E.2d 1185.
The degree of fault must at least amount to negligence. Hodges v.Meijer, Inc. (1998), 129 Ohio App.3d 318, 324, 717 N.E.2d 806 quotingAkron-Canton Waste Oil v. Safety-Kleen Oil Serv. (1992),81 Ohio App.3d 591, 601, 611 N.E.2d 955, quoting 3 Restatement of the Law 2d, Torts (1977) 155, Section 558. "`Insofar as the truth or falsity of the defamatory statement is concerned, the question of negligence has sometimes been expressed in terms of the defendant's state of mind by asking whether he had reasonable grounds for believing that the communication was true.'" Bays v. Northwestern Local School Dist. (July 21, 1999), 9th Dist. No. 98CA0027, quoting 3 Restatement of the Law 2d, Torts (1977) 227, Section 580(B), Comment g.
Lansdowne requires a heightened standard of proof in proving fault because, as the court noted, in "normal" civil suits where the preponderance of evidence standard is employed, it is no more serious for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. Lansdowne at 180. However, citing Gertz v. Welch, Inc. (1974), 418 U.S. 323,94 S.Ct. 2997, 41 L.Ed.2d 789, and Rosenbloom v. Metromedia, Inc. (1971),403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296, the court found an erroneous verdict for the plaintiff in libel cases must be viewed as more serious. Id. This is to tip the scales of justice in favor of free speech. Id. at 181, at 984 quoting Philadelphia Newspapers, Inc. v. Hepps (1986),475 U.S. 767, 777, 106 S.Ct. 1558, 89 L.Ed.2d 783.
Clear and convincing evidence is the measure or degree of proof more than a mere "preponderance of the evidence," but less than required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Ass'n v. Massengale
(1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. When a trial court's determination is supported by evidence legally sufficient to meet the clear and convincing standard of proof, it will be affirmed by a reviewing court. State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54 certiorari denied 499 U.S. 961, 111 S.Ct. 1584,113 L.Ed.2d 649. The judgment will not be reversed by this court if it is supported by competent, credible evidence establishing all the essential elements of the case. In re Glenn (2000), 139 Ohio App.3d 105, 112, 742 N.E.2d 1210;State ex rel. Shady Acres Nursing Home v. Rhodes (1983), 7 Ohio St.3d 7,7 OBR 318, 455 N.E.2d 489.
The record illustrates the Kalmers did virtually no investigation as to the veracity of their statements before they distributed the flyers. Indeed, when asked by their counsel what was their basis for saying Prizant's knew Bosak was unethical, Rose Kalmer responded, "Because I had told them what he had done." Tr. p. 175. Furthermore, she testified no one other than her husband, a party-defendant who did not testify, told her Prizant's was unethical. Furthermore, she was confused as to whether she talked to Prizant's before or after the flyers were distributed. Thus, Bosak has established by competent, credible evidence that the only thing the Kalmers did to ascertain the truth of the statements in the flyer was to tell Prizant's that they had a problem with Bosak. Despite the Kalmers' assertions to the contrary, merely telling Prizant's that the Kalmers had problems with Bosak is insufficient to prove that Prizant's knew Bosak was unethical. This, combined with the other evidence at trial, supports a finding that they were at least negligent in determining whether the statements were true or not. Thus, Bosak showed fault by clear and convincing evidence.
Because Bosak established by clear and convincing evidence the Kalmers made false statement of fact, not opinion, each of the Kalmers' arguments within their first assignment of error fail. The Kalmers' first assignment of error is meritless.
In their second assignment of error, the Kalmers argue the trial court erred when it awarded punitive damages. In a tort action, a plaintiff must prove the defendant acted with malice, aggravated or egregious fraud, oppression, or insult in order to recover punitive damages by clear and convincing evidence. R.C. 2315.21. "The purpose of punitive damages is to punish the offender and set an example in order to deter others from similar behavior." Bryans v. English Nanny and GovernessSchool, Inc. (1996), 117 Ohio App.3d 303, 317, 690 N.E.2d 582. "It is the egregiousness of the defendant's conduct that determines the appropriateness of an award of punitive damages." Meyers v. Hot BagelsFactory, Inc. (1999), 131 Ohio App.3d 82, 97, 721 N.E.2d 1068.
The Ohio Supreme Court has defined the "actual malice" needed to prove punitive damages as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis sic.) Prestonv. Murty (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. The latter category of actual malice includes "extremely reckless behavior revealing a conscious disregard for a great and obvious harm." Id. at 335,512 N.E.2d at 1175.[1] Malice may be inferred from "reckless, wanton, willful or gross" behavior. Villella v. Waikem Motors, Inc. (1989),45 Ohio St.3d 36, 37, 543 N.E.2d 464.
Whether actual malice exists is a question for the trier of fact. SeeBuckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280,720 N.E.2d 495; R.C. 2315.21(C)(1). "The same standard of review is employed to assess the weight of evidence whether the finding is for compensatory damages or the elements necessary to justify an award of punitive damages." Hofner v. Davis (1996), 111 Ohio App.3d 255, 259,675 N.E.2d 1339. Factual determinations will not be overturned as long as they are supported by "some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.
In her testimony, Mrs. Kalmer stated she and her husband were trying to settle the disagreement with Bosak when they published the flyers. When attempting to settle the matter with Bosak they "tried to warn him", but he did not listen to them, so they distributed the flyers. She repeatedly stated the reason for publishing the flyer was "To get the word out to the people." She and her husband had no evidence any other person had ever had a problem with Bosak or thought he was unethical. Furthermore, neither she nor her husband received any legal advice prior to distributing the flyers. However, she and her husband distributed the flyers in Bosak's neighborhood, local malls, and repeatedly at Prizant's.
In addition to the above facts, Mrs. Kalmer's testimony reveals why the trial court may have found the Kalmers published the flyer out of a feeling of hatred, ill will, or a spirit of revenge. It appears that while Bosak was installing the flooring, he asked Mrs. Kalmer some questions she found objectionable because she felt they were of too personal a nature, such as where her husband was and if they were happily married. Very soon after she told her husband about these questions, he called Bosak and told him not to return.
The extent of the distribution, the lack of investigation the Kalmers did into the veracity of their statements, and reasonable inferences made from the timing of Bosak's personal questions and Mr. Kalmer's response all are competent, credible evidence supporting the trier of fact's finding of actual malice. Accordingly, the Kalmers' second assignment of error is meritless.
In their final assignment of error, the Kalmers assert the trial court erred by not certifying in the record that it had familiarized itself with the entire record as required by Civ.R. 63(A). As stated above, the trial initially proceeded before Magistrate Wilkes. However, after Bosak testified court recessed and, before the trial was resumed, Magistrate Wilkes died. Subsequently, Judge Cacioppo was assigned to conduct the remainder of the case.
This argument fails for a variety of reasons. Civ.R. 63(A) states as follows:
"If for any reason the judge before whom a jury trial has commenced is unable to proceed with the trial, another judge, designated by the administrative judge, or in the case of a single-judge division by the chief justice of the supreme court, may proceed with and finish the trial upon certifying in the record that he has familiarized himself with the record of the trial; but if such other judge is satisfied that he cannot adequately
familiarize himself with the record, he may in his discretion grant a new trial." (Emphasis added).
As can be seen, Civ.R. 63(A) only applies to jury trials. This was not a jury trial. Rather, it was a bench trial. Furthermore, Civ.R. 63(A) does not apply to magistrates as they are not subject to the rules that control judges. Hartt v. Munobe (1993), 67 Ohio St.3d 3, 8, 615 N.E.2d 617;Apgar v. Apgar (1984), 21 Ohio App.3d 193, 194, 486 N.E.2d 1181. Finally, and most importantly, in the first paragraph of the judgment entry, the trial court stated it "heard opening statements of Counsel and they took Evidence, heard the Closing Arguments of Counsel and thenreviewed the file." (Emphasis added) Judgment Entry at 1. Therefore, Judge Cacioppo did, in fact, certify she had familiarized herself with the record. Accordingly, the Kalmers' third assignment of error is meritless.
In conclusion, the Kalmers' first assignment of error fails because they did negligently publish a false, unprivileged statement of fact which caused Bosak damages. Their second assignment of error fails because Bosak proved actual malice by clear and convincing evidence and, therefore, he was entitled to punitive damages. Their final assignment of error fails for a variety of reasons, the greatest of which is that the trial court did certify in the record that it familiarized itself with the prior proceedings. Because each of the Kalmer's assignments of error is meritless, the trial court's decision is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
[1] Although the same term, "actual malice", is used in cases dealing with defamation of public figures, see New York Times Co. v. Sullivan
(1964), 376 U.S. 254, 284-286, 84 S.Ct. 710, 11 L.Ed.2d 686, the present case does not address the issues arising out of Sullivan.